UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

——————————————————————X

TRUSTEES OF THE PLUMBERS LOCAL
UNION NO. 1 WELFARE FUND, TRADE
EDUCATION FUND, AND 401(K) SAVINGS
PLAN, TRUSTEES OF THE UNITED                          **REPORT & RECOMMENDATION**
ASSOCIATION NATIONAL PENSION FUND,
and TRUSTEES OF THE INTERNATIONAL                         24-cv-4273 (LDH) (LKE)
TRAINING FUND,

                    Plaintiffs,

            v.

LG ELITE PLUMBING, INC.,

                    Defendant.

——————————————————————X

**LARA K. ESHKENAZI**, United States Magistrate Judge:

Before the Court, on referral from the Honorable LeShann DeArcy Hall, is the motion of

Plaintiffs, Trustees of the Plumbers Local Union No. 1 Welfare Fund, Trade Education Fund, and

401(K) Savings Plan, Trustees of the United Association National Pension Fund, and Trustees of

the International Training Fund (collectively "Plaintiffs" or the "Funds"), for default judgment

against Defendant LG Elite Plumbing, Inc. ("Defendant" or "LG"). For the reasons set forth below,

the Court respectfully recommends that the motion be granted in part and denied in part.

## I.      BACKGROUND

The following facts are taken from the Complaint (ECF 1) and Plaintiffs' Motion for

Default Judgment (Mot. for Default Judgment ("Mot. for Default J."), ECFs 18-23), and they are

assumed to be true for the purposes of this motion. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d

Cir. 2009) (holding that in light of a defendant's default, a court is required to accept all of

plaintiff's factual allegations as true and draw all reasonable inferences in its favor).

### A.   Factual Allegations

Plaintiffs Trustees of the Plumbers Local Union No. 1 Welfare Fund, Trade Education Fund, and 401(K) Savings Plan (collectively the "Local 1 Funds"), are employer and employee trustees of multiemployer labor-management trust funds organized and operated in accordance with Section 302(c) of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 186(c). (Compl. ¶ 4.) Local 1 Funds administer employee benefit plans under Section 3(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(3). (*Id.*) Plaintiffs Trustees of the United Association National Pension Fund ("UANPF") and Trustees of the International Training Fund ("ITF," and collectively the "National Funds") are employer and employee trustees of a multiemployer employee pension benefit plan within the meaning of Sections 3(2) and 3(37) of ERISA, 29 U.S.C. §§ 1002(2) and (37). (*Id.* ¶¶ 6-7.)

Defendant is a domestic business corporation, organized under the laws of the State of New York, and constitutes an employer pursuant to ERISA, 29 U.S.C. §§ 602(5), 1145, and the Taft-Hartley Act, 29 U.S.C. § 185. (*Id.* ¶ 8.) On May 10, 2022, Defendant entered into a collective bargaining agreement ("CBA") with the Local Union No. 1 of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada (the "Union"), covering the period from October 1, 2019, through December 31, 2022. (Mot. for Default J., Decl. of Wendy Salvatierra ("Salvatierra Decl."), ECF 19; Exs. A and B, ECF 19-1, 19-2.) The Trust Agreements establishing the Funds are incorporated into the CBA. (Compl. ¶¶ 13, 15-16; Salvatierra Decl. ¶ 13.)

Pursuant to the CBA, Trust Agreements, and Collection Policies, Defendant had payment and recordkeeping obligations. (Compl. ¶16-17.) Defendant was required to remit specified benefit contributions to the Funds and related entities, based on the number of hours worked by Union

2

employees performed within the trade and geographical jurisdiction of the Union. (*Id.* ¶ 19; Salvatierra ¶ 16.) Defendant was also required to submit remittance reports detailing the number of hours worked by each employee ("Covered Work") and forward specified contributions to the Funds on or before the 20th day following the close of the month in which the hours were worked. (Compl. ¶ 20; Salvatierra Decl. ¶ 17.) Pursuant to the Trust Agreements, the Funds established collection policies for delinquent fringe benefit contributions. (Compl. ¶ 17-18; Salvatierra Decl. ¶ 15; Decl. of Toni C. Inscoe ("Inscoe Decl.") ¶ 14). Under the Funds' Collection Policies, if Defendant is delinquent in making contributions or submitting remittance reports for two or more months, Plaintiffs may estimate the amount of Defendant's delinquent contributions as a determination of payments for each delinquent month. (Compl. ¶¶ 21-22; Salvatierra Decl. ¶ 20, Ex. H, Art. IV. ¶ 9, ECF 19-8; Inscoe Decl. ¶¶ 13-14.) If Defendant does not timely remit contributions to the Funds, Plaintiffs are entitled to unpaid contributions, liquidated damages on the amount of unpaid contributions, interest, and attorneys' fees and costs. (Compl. ¶¶ 23-26; Mem. L. at 4, ECF 22.)

When Defendant failed to report the number of hours of Covered Work for the period of January 2024 through April 2024, Plaintiffs brought the instant action, alleging claims of unpaid contributions and violations of the CBA. (Compl. ¶¶ 37, 40-44.) Subsequently, Defendant provided Plaintiffs with "unfunded remittance reports … detailing the number of hours of Covered Work performed by its employees for the period February through April 2024." (Mem. L. at 4; Salvatierra Decl. ¶ 25, Ex. J, ECF 19-10; Inscoe Decl. ¶ 17, Ex. S, ECF 20-5.) The reports demonstrate that Defendant owes contributions of $33,885.11 to Local 1 Funds, and $6,376.82 to National Funds for the work performed from February 2024 through April 2024. (Mem. L. at 4; Salvatierra Decl. ¶ 25, Ex. J; Inscoe Decl. ¶ 17, Ex. S.) Because Defendant did not provide

3

remittance reports for January 2024, pursuant to the Collection Policies, Plaintiffs used the estimation protocol to calculate Defendant's January contributions, and determined that Defendant owes $10,897.71 to Local 1 Funds, and $2,139.43 to National Funds. (Mem. L. at 4; Salvatierra Decl. ¶ 27-31, Exs. L, K, ECFs 19-12, 19-11; Inscoe Decl. ¶¶ 19-23; Exs. T-V, ECFs 20-6, 20-7, 20-8.) Plaintiffs also seek to recover liquidated damages, interest, and attorneys' fees and costs. (Mem. L. at 15-16.)

### B. Procedural History

On June 17, 2024, Plaintiffs filed their Complaint against Defendant and Ohio Casualty Insurance Company. (*See* Compl.) Defendant was properly served and Plaintiffs filed proof of service on June 25, 2024. (Aff. of Serv., ECF 7.) When Defendant did not appear or otherwise respond, Plaintiffs filed an application for a Clerk's Certificate of Default on August 13, 2024. (ECF 10.) The Clerk of Court entered default against Defendant on August 14, 2024. (ECF 13.) Plaintiffs filed a stipulation of voluntary dismissal with prejudice as to their claims against The Ohio Casualty Insurance Company on December 16, 2024, which Judge DeArcy Hall entered on January 10, 2025. (ECF 17; Jan. 10, 2025, Order.) On April 2, 2024, Plaintiffs filed the instant motion for default judgment against Defendant. (ECFs 18-23.) Judge DeArcy Hall referred the motion to the undersigned for a report and recommendation. (Apr. 10, 2025, Order.)

## II. DISCUSSION

### A. Jurisdiction and Venue

"The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Here, Plaintiffs assert claims under ERISA, 29 U.S.C. § 1001 *et seq*, and Section 301 of the LMRA, 29 U.S.C. § 185. (Compl. ¶ 1.) Given that this action arises under the laws of the United States, the Court has subject matter

jurisdiction over this action. *See, e.g.*, *Rocha v. Bakhter Afghan Halal Kababs, Inc.*, 44 F. Supp. 3d 337, 345 (E.D.N.Y. 2014).

"For a federal court to exercise personal jurisdiction over a defendant, the plaintiff's service of process upon the defendant must have been procedurally proper." *Windward Bora LLC v. Valencia*, No. 19-cv-4147 (NGG) (RER), 2020 WL 6470293, at *2 (E.D.N.Y. Oct. 16, 2020), *R. & R. adopted*, 2020 WL 6450286 (E.D.N.Y. Nov. 3, 2020). Federal Rule of Civil Procedure 4(h)(1)(A) provides that a corporate defendant must be served "in the manner prescribed by Rule 4(e)(1) for serving an individual[.]" Fed. R. Civ. P. 4(h)(1)(A). Moreover, under subsection (B), the summons and complaint may be served by delivering a copy to "an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant." Fed. R. Civ. P. 4(h)(1)(B). Rule 4(e)(1) states that an individual may be served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made[.]" Fed. R. Civ. P. 4(e)(1).

The New York Business Corporation Law ("NYBCL") mandates that "[t]he secretary of state shall be the agent of every domestic corporation and every authorized foreign corporation upon whom process against the corporation may be served." N.Y. Bus. Corp. Law § 304(a). Indeed, "[n]o domestic or foreign corporation may be formed or authorized to do business in this state under this chapter unless in its certificate of incorporation or application for authority it designates the secretary of state as such agent." *Id.* § 304(b). Lastly, NYBCL section 306 provides that:

> Service of process on the secretary of state as agent of a domestic … corporation shall be made … [by] [p]ersonally delivering to and leaving with the secretary of state or a deputy, or with any person authorized by the secretary of state to receive such service, at the

> office of the department of state in the city of Albany, duplicate copies of such process together with the statutory fee…. Service of process on such corporation shall be complete when the secretary of state is so served.

*Id.* § 306(b)(1).

Here, Plaintiff has properly served Defendant in this action. Defendant is a New York limited liability company, so service of process of the Summons and Complaint upon the New York Secretary of State constitutes proper service on Defendant. (Compl. ¶ 8; Aff. of Serv., ECF 7.) On June 20, 2024, Plaintiff's process server personally delivered and left two copies of the Summons and Complaint, along with the statutory fee, with Amy Lesch, the Authorized Agent in the Office of the Secretary of State of New York. (ECF 7.) Ms. Lesch was served at the Office of the Secretary. (*Id.*) Plaintiff subsequently filed the proof of service with the court on June 25, 2024. (*See id.*) Moreover, Plaintiffs also served Defendant at its business addresses via certified and electronic mail and filed proof of service. (Aff. of Serv., ECF 6.) Therefore, this Court has personal jurisdiction over Defendant.

"[A] civil action may be brought in a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1); *see also* 29 U.S.C. § 1132(e)(2) (providing that an action brought by an employee benefit plan "may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found"). A corporation is deemed to be a resident of "any district" in "a state which has more than one judicial district and in which . . . [that] corporation is subject to personal jurisdiction at the time an action is commenced." 28 U.S.C. § 1391(d). As alleged, Defendant is a New York LLC with a principal place of business in Ozone Park, New York, and a business address in Jamaica, New York. (Compl. ¶ 8, 10.) Therefore, venue in the Eastern District of New York is proper. *See* 28 U.S.C § 1391(b)(1).

**B.**     <u>**Default Judgment Standard**</u>

Under Rule 55 of the Federal Rules of Civil Procedure, there are two steps to entering a default judgment. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95-96 (2d Cir. 1993). First, the Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case. Fed R. Civ. P. 55(a) (providing that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."). This first step is nondiscretionary. *See United States v. Conolly*, 694 Fed. App'x 10, 12 (2d Cir. 2017). Second, after the Clerk of the Court enters a defendant's default, the court may enter a default judgment. *See* Fed R. Civ. P. 55(b).

Whether or not a default judgment is issued is up to the discretion of the court. When evaluating a plaintiff's application for a default judgment, "a court is required to accept all … factual allegations as true and draw all reasonable inferences in [plaintiff's] favor." *Romanowicz*, 577 F.3d at 84. "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *La Barbera v. ASTC Labs., Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (internal quotations and citations omitted); *see TAGC Mgmt., LLC v. Lehman, Lee & Xu Ltd.*, 536 Fed. App'x 45, 46 (2d Cir. 2013) ("[P]rior to entering default judgment, a district court is required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law.") (internal quotations and citations omitted).

"Default judgments 'are generally disfavored and are reserved for rare occasions.'" *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 168 (2d Cir. 2004) (quoting *Enron Oil Corp.*, 10 F.3d at 96). While the Second Circuit has recognized the "push on a trial court

to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] ... delay and clog its calendar," it has held that a district court must balance that interest with its responsibility to "afford[] litigants a reasonable chance to be heard." *Enron Oil Corp.*, 10 F.3d at 96. Thus, considering the "oft-stated preference for resolving disputes on the merits," doubts should be resolved in favor of the defaulting party. *See id.* at 95-96. Accordingly, a plaintiff is not entitled to a default judgment as a matter of right simply because defendants are in default. *See Erwin DeMarino Trucking Co. v. Jackson*, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice.").

"In determining whether to enter a default judgment, the Court is guided by the same factors that apply to a motion to set aside entry of a default." *Double Green Produce, Inc. v. Forum Supermarket Inc.*, No. 18-cv-2660 (MKB) (SJB), 2019 WL 1387538, at *2 (E.D.N.Y. Jan. 29, 2019) (citing *Enron Oil Corp.*, 10 F.3d at 96); *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 170-71 (2d Cir. 2001)). "These factors are 1) whether the defendant's default was willful; 2) whether the defendant has a meritorious defense to plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Id.* at *2 (quoting *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-cv-9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003)) (internal quotation marks omitted).

As to the first factor, "a defendant's nonappearance and failure to respond sufficiently demonstrates willfulness." *Luna v. Gon Way Constr., Inc.*, No. 16-cv-1411 (ARR) (VMS), 2017 WL 835321, at *4 (E.D.N.Y. Feb. 14, 2017) (collecting cases), *R. & R. adopted*, 2017 WL 835174 (E.D.N.Y. Mar. 2, 2017). Here, Defendant has not responded to the Complaint or the motion for default judgment despite proper service. (*See* Affs. of Serv., ECFs 6-7; Cert. of Serv., ECF 23.) Defendant's failure to respond to the Complaint or the instant motion demonstrates that

8

Defendant's default is willful. *See Traffic Sports USA v. Modelos Restaurante, Inc.*, No. 11-cv-1454 (ADS) (AKT), 2012 WL 3637585, at *2 (E.D.N.Y. Aug. 1, 2012), *R. & R. adopted*, 2012 WL 3626824 (E.D.N.Y. Aug. 22, 2012) (finding the defendant's failure to respond "in any way" to the Complaint, combined with the affidavits demonstrating proper service, confirmed beyond "any doubt" that the defendant's failure to respond was willful).

As to the second factor, Defendant's failure to appear in this action has left the Court unable to assess whether it has a meritorious defense. "Where a defendant fails to answer the complaint, courts are unable to make a determination whether the defendant has a meritorious defense to the plaintiff's allegations[.]" *See Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 143 (E.D.N.Y. 2013). This factor therefore weighs in favor of granting a default judgment.

With respect to the third factor, Plaintiffs will be prejudiced if the motion for default judgment is denied because "[w]ithout the entry of a default judgment, Plaintiffs would be unable to recover for the claims adequately set forth in the Complaint." *Korzeniewski v. Sapa Pho Vietnamese Rest. Inc.*, No. 17-cv-5721 (MKB) (SJB), 2019 WL 312149, at *4 (E.D.N.Y. Jan. 3, 2019) (quoting *Sola Franchise Corp. v. Solo Salon Studios Inc.*, No. 14-cv-946 (JS) (AKT), 2015 WL 1299259, at *15 (E.D.N.Y. Mar. 23, 2015)).

Accordingly, the Court recommends finding that Defendant's failure to answer or otherwise appear in this matter constitutes an admission of the factual allegations therein. The Court now assesses the propriety of a default judgment with respect to Plaintiff's claims under ERISA and LMRA.

**C.    Liability**

**1.    Violation of Section 515 of ERISA**

"ERISA is a comprehensive federal law that sets standards for private retirement and health plans, governs their administration, and generally preempts state regulation of benefits plans." *Annuity, Pension, Welfare, Training & Lab. Mgmt. Coop. Tr. Funds of Int'l Union of Operating Eng'rs Loc. 14-14B, AFL-CIO v. C.M. Ashland Constr.*, 714 F. Supp. 3d 167, 176 (E.D.N.Y. 2024) (citing ERISA § 514(a), 29 U.S.C. § 1144(a)). Under ERISA, "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. Trustees of a plan may, pursuant to Section 502, bring an action to enforce this requirement. *See* 29 U.S.C. § 1132(a)(3); *Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310, 313-14 (2d Cir. 1990).

To establish a violation of Section 515, Plaintiffs must show that Defendant (1) is an employer; (2) is bound by a CBA that required payment of contributions; and (3) failed to make those contributions. *Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. Rici Corp.*, No. 23-cv-5856 (DLI) (SJB), 2024 U.S. Dist. LEXIS 177831, at *10 (E.D.N.Y. Aug. 19, 2024), *R. & R. adopted*, 2024 U.S. Dist. LEXIS 177831 (E.D.N.Y. Sep. 26, 2024). "An 'employer' is 'any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan ... and includes a group or association of employers acting for an employer in such capacity.'" *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Eng'rs Loc. 15, 15A, 15C & 15D, AFL-CIO by Callahan v. Baymen Indus. Ltd.*, No. 22-cv-703 (VMS), 2024 WL 4274949, at *7 n.16 (E.D.N.Y. Sept. 24, 2024) (quoting 29 U.S.C. § 1002(5)). Plaintiffs sufficiently allege that Defendant is an employer that bound itself to the CBA and benefit plan. (Compl. ¶¶ 8, 12 (alleging

10

that "LG Elite was a party to, and/or manifested its intention to be bound by, a collective bargaining agreement, project labor agreement and/or participation agreement with the Union.").)

Plaintiffs have also sufficiently alleged that Defendant was bound by a CBA requiring it to make benefit contributions to the Funds and that Defendant failed to do so, in violation of the CBA and Collection Policies from January through April 2024. (*Id.* ¶¶ 19-22, 27-31.) The Complaint alleges that Defendant "failed to report to the number of hours of Covered Work performed by each of its employees to the Local 1 Funds" and "the National Funds for the period January through April 2024," (*id.* ¶ 27, 30), which is sufficient to state a claim under Section 515. *See, e.g.*, *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Eng'rs., Loc. 15, 15A, 15C & 15D, AFL-CIO v. Trac Constr. Grp., Inc.*, No. 22-cv-1935 (ENV) (RER), 2022 U.S. Dist. LEXIS 181901, at *3 (E.D.N.Y. Oct. 4, 2022) ("At the pleading stage, allegations in a complaint that an employer failed to remit contributions to an ERISA plan are sufficient to establish the employer's liability under ERISA." (citation omitted)), *R. & R. adopted*, 2022 U.S. Dist. LEXIS 230934 (E.D.N.Y. Dec. 21, 2022). The Court therefore recommends granting Plaintiffs' motion for default judgment as to liability under ERISA.

### 2.    Violation of Section 301 of the LMRA

Section 301 of the LMRA provides a federal cause of action for breaches of contracts between employers and labor organizations representing employees in industries engaged in or affecting commerce. 29 U.S.C. § 185(a); *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Eng'rs, Loc. 15, 15A, 15C & 15D, AFL-CIO by Callahan v. Regal USA Concrete, Inc.*, No. 23-cv-1209 (MKB) (SJB), 2024 WL 79671, at *5 (E.D.N.Y. Jan. 8, 2024), *R. & R. adopted*, 2024 WL 748399 (E.D.N.Y. Feb. 23, 2024) ("[A] breach of a CBA is a claim under Section 301 of the LMRA. And as such, a breach of a CBA based on a failure to make

11

employee benefit contributions is actionable under Section 301."). Unions and employee benefit plans have standing to sue under the LMRA. *See Loc. 355 United Serv. Workers Union, Int'l Union of Journeymen & Allied Trades v. Airtech NYC-LI, Inc.*, No. 22-cv-5225 (ENV) (VMS), 2023 WL 7000886, at *1 (E.D.N.Y. Sept. 1, 2023); *Legal Aid Society v. City of New York*, 114 F. Supp. 2d 204, 214 (S.D.N.Y. 2000).

Under the CBA and Collection Policies, Defendant was required to remit its contributions to the Funds on or before the 20th day following the close of the month in which the hours were worked. (Compl. ¶ 20.) Plaintiffs allege that Defendant breached the CBA by failing to remit specified benefit contributions and reports detailing the number of hours of Covered Work performed by its employees from the period January through April 2024. (*Id.* ¶¶ 18-22, 27-31; *see* Salvatierra Decl. ¶ 24; Inscoe Decl. ¶ 16.) Therefore, by alleging that Defendant failed to remit employee benefit contributions, as mandated by the CBA, Plaintiffs have established Defendant's liability under the LMRA. *See Sullivan v. Marble Unique Corp.*, No. 10-cv-3582 (NGG) (LB), 2011 WL 5401987, at *3 (E.D.N.Y. Aug. 30, 2011), *R. & R. adopted*, 2011 WL 5402898 (E.D.N.Y. Nov. 4, 2011) (holding that Defendant breached Section 301 of the LMRA when it failed to make required contributions under the CBA); *Brown v. C. Volante Corp.,* 194 F.3d 351, 354 (2d Cir. 1999); *Trs. of the Plumbers Loc. Union No. 1 Welfare Fund, Additional Sec. Ben. Fund, Vacation & Holiday Fund, Trade Educ. Fund & 401(k) Sav. Plan v. Philip Gen. Const.*, No. 05-cv-1665 (NG) (RLM), 2007 WL 3124612, at *4 (E.D.N.Y. Oct. 23, 2007).

Defendant was properly served with the Summons and Complaint, as well as the motion for default judgment, but has failed to respond and therefore does not contest liability. Accordingly, this Court finds that Plaintiff has established Defendant's liability under ERISA and the LMRA.

**D.    Damages**

A default constitutes an admission of well-pleaded factual allegations except those relating to damages. *See Credit Lyonnais Secs. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) ("Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint, with respect to the amount of the damages are not deemed true.") Federal Rule of Civil Procedure 55(b)(2) provides courts discretion to determine whether an evidentiary hearing is necessary or whether to rely on detailed affidavits or documentary evidence. *Action S.A. v. Marc Rich & Co., Inc.,* 951 F.2d 504, 508 (2d Cir. 1991). "The court may determine damages without an in-person hearing based on the plaintiff's affidavits so long as it can ensure a basis for the damages specified in the default judgment." *Zabrodin v. Silk 222, Inc.*, 702 F. Supp. 3d 102, 113 (E.D.N.Y. 2023). The moving party is "entitled to all reasonable inferences from the evidence offered." *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).

Here, to support their claim for damages, Plaintiffs provide affidavits from Adrianna R. Grancio, Plaintiffs' counsel, containing contemporaneous time records and receipts, and Wendy Salvatierra, Administrator of the Local 1 Funds, and Toni C. Inscoe, Custodian of Records for UANPF, describing the method used to calculate the amount of delinquent funds. (ECF 19-21.) A evidentiary hearing is therefore unnecessary as the Court can ensure a basis for the requested damages based on the submitted affidavits.

After establishing liability under Section 515 of ERISA, a plaintiff is entitled to an award of: "(1) the amount of unpaid contributions, (2) interest on the unpaid contributions, (3) liquidated damages, (4) reasonable attorney's fees and costs, and (5) such other legal and equitable relief as the court deems appropriate." *Lanzafame v. Toquir Contracting, Inc.*, 545 F. Supp. 2d 255, 259 (E.D.N.Y. 2007) (citing 29 U.S.C. § 1132(g)(2)); *see also Iron Workers Dist. Council of W.N.Y. &*

13

*Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc.*, 68 F.3d 1502, 1505-08 (2d Cir. 1995).

### 1. Unpaid Contributions

#### a. Local 1 Funds

Plaintiffs seek a judgment awarding Local 1 Funds $10,897.71 in estimated contributions for January 2024, and $33,885.11 in actual contributions. (Salvatierra Decl. ¶ 27-31; Mem. L. at 9.) Defendant submitted unfunded remittance reports to the Local 1 Funds detailing the number of hours of covered work performed by its employees for February through April 2024. (*See* Salvatierra Decl. ¶ 26.) Based on those unfunded remittance reports, the Local 1 Funds determined that Defendant failed to remit contributions totaling $33,885.11 for that period. (*Id.*) In addition, Local 1 Funds estimates that Defendant owes $10,897.71 in estimated contributions. (*Id.* ¶ 31.) Per the Collection Policy, Local 1 Funds relied on reports for the last three months for which reports and payments were submitted to estimate the amount owed for Covered Work performed in January 2024. (*Id.* ¶ 30.)

Having reviewed Local 1 Funds' supporting documentation, this Court respectfully recommends that the Local 1 Funds be awarded $44,782.82 in unpaid employee benefit contributions from Defendant. *See Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Eng'rs Loc. 15 , 15A, 15C & 15D, AFL-CIO by Callahan v. PETK, Inc.*, No. 22-cv-3559 (LDH) (LB), 2022 WL 19520880, at *4 (E.D.N.Y. Oct. 13, 2022) ("In ERISA cases seeking an award of damages after a finding of liability, Courts frequently rely on the affidavits, reports, and other documentary evidence filed by plaintiffs.")

14

b.       *National Funds*

As to National Funds, Plaintiffs seek a judgment awarding them $2,139.43 in estimated contributions for January 2024, and $6,376.82 in actual contributions. (*See* Inscoe Decl. ¶ 18, Ex. T.) Defendant also submitted unfunded remittance reports to the National Funds detailing the number of hours of covered work performed by its employees for February through April 2024. (*See id.* ¶ 17, Ex. S.) Based on those unfunded remittance reports, the National Funds determined that Defendant failed to remit contributions totaling $6,376.82 for that period, with $6,188.52 owed to UANPF, and $188.30 to ITF. (*Id.*) National Funds also estimates that Defendant owes $2,139.43 in estimated contributions for January 2024. (*Id.* ¶ 22.) Per the Collection Policy, National Funds relied on reports for the last three months for which reports and payments were submitted to estimate the amount owed for Covered Work performed in January 2024. (*Id.* ¶ 22.)

Having reviewed National Funds' supporting documentation, this Court finds that there is a clerical error in the contribution calculations. According to the remittance reports, Defendant owes UANPF $2,489.72 for February, $2549.67 for March, and $1,070.73 for April 2024, for a total of $6,110.12. (Inscoe Decl., Ex. S, ECF 20-5 (showing the "Amount Owed" to "National Pension" for each month).) ITF is owed $76.20 for February, $78.40 for March, and $33.70 for April 2024, for a total of $188.30. (*Id.* (showing the "Amount Owed" to "International Training" for each month).) National Funds appears to have inadvertently included ITF's amount owed when calculating the contributions that only UANPF is owed for March 2024. (Inscoe Decl., Ex. T, ECF 20-6 (showing that UANPF is owed $2,628.07, instead of $2,549.67 as provided on the remittance reports).) As this error affects National Funds' interest and liquidated damages calculations, this Court respectfully recommends that National Funds' request for damages be denied, with leave to submit documentation amending the contribution calculations.

### 2.    Interest, Liquidated Damages, and Administrative Fees

Under ERISA, "interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26." 29 U.S.C. § 1132(g)(2). "Under the LMRA, it is within the court's discretion to award prejudgment interest." *Finkel v. INS Elec. Servs. Inc.*, No. 06-cv-4862, 2008 WL 941482 at*7 (E.D.N.Y. Apr. 4, 2008). In addition, the court may award "liquidated damages provided for under the plan in an amount not in excess of 20 percent" of the unpaid contributions. 29 U.S.C. § 1132(g)(2)(C)(ii).

Under the documents and instruments governing the Funds—including the CBAs, Trust Agreements, and Collection Policies—employers whose contributions are delinquent, such as Defendant, are liable to the Funds for the amount of delinquent contributions, interest calculated from the twentieth day following the due date and compounded annually, plus liquidated damages. (See Salvatierra Decl. ¶ 21, Exs. B-C, Art. VI; Exs. E-G, Art. VI, Sec. 6; Ex. H, ¶ 6; Ex. I, Art. III.B.2.) The Local 1 Fund Collection Policies also allow the Funds to assess a $100 administrative fee for every month for which the employer failed to pay contributions. (*See* Salvatierra Decl. ¶ 23, Ex. H, Art. II, ¶ 6.)

Per the CBAs, Trust Agreements, and Collection Policies, interest is charged at the annual rate of ten percent for the Local 1 Funds. (*Id.* ¶ 21.) Accordingly, Defendant is liable to the Local 1 Funds for interest on the delinquent contributions for the period of January through April 2024, at the rate of ten percent *per annum*, compounded annually, through the date of judgment.[1]

---

[1] Interest is calculated by multiplying the contributions due per month by the annual interest rate of ten percent, as provided for in the CBA and Local 1 Fund Collection Policies, and then dividing that figure by 365 to yield the daily interest rate. For example, for January 2024, the estimated contributions of $10,897.71 are multiplied by ten percent interest rate to yield a total yearly interest of $1,089.77. That figure is then divided by 365 to render the daily interest rate of $2.99. The daily interest rate is then multiplied by the number of days the contributions are late or have been paid late. January 2024 contributions were due on February 20, 2024. Since the January 2024 contributions remain outstanding, interest on those contributions must be calculated through the date of judgment. (*See* Salvatierra Decl. Ex. K.)

Additionally, the Company remitted contributions for October and November 2023 beyond their respective due dates, resulting in the accrual of late payment interest of $430.94. (*See id.* ¶ 38, Exs. K, M.)

Liquidated damages are calculated as twenty percent of the principal delinquency, totaling $8,956.56 ($44,782.82 x .2). (*See id.*, Ex. K.) Defendant also owes Local 1 Funds lost earnings from October 3, 2023, through March 12, 2024, totaling $31.51. (*See id.*, Ex. M.) Finally, since the Company has failed to submit contributions to the Local 1 Funds from January through April 2024, the administrative fees total $400. (*Id.* ¶¶ 34, 37.)

### 3.    Attorney's Fees and Costs

Pursuant to Section 502 of ERISA, where an action is brought by a fiduciary to enforce section 515 of ERISA, the court "shall award … reasonable attorney's fees … to be paid by the defendant." 29 U.S.C. § 1132(g)(2)(D); *see also Finkel v. Triple A Grp., Inc.*, 708 F. Supp. 2d 277, 290 (E.D.N.Y. 2010) ("[u]pon a finding that defendants have been delinquent in paying contributions, liability for attorney's fees under § 1132(g)(2) is mandatory."); *Guidice v. All Reliable Servs., Inc.*, No. 23-cv-7575 (NJC) (JMW), 2025 WL 521144, at *2 (E.D.N.Y. Feb. 18, 2025) (awarding attorneys' fees); *Durso v. Casa Bella Contracting, Inc.*, No. 23-cv-7107 (EK) (AYS), 2025 WL 2496082, at *4 (E.D.N.Y. Aug. 12, 2025), *R. & R. adopted*, 2025 WL 2494317 (E.D.N.Y. Aug. 29, 2025) (noting that "[p]ursuant to ERISA Section 502(g)(2)(D), 29 U.S.C. § 1132(g)(2)(D), plaintiffs are typically entitled to payment of their reasonable attorneys' fees and costs incurred in a successful action to obtain withdrawal liability."); *Trs. Of Loc. 813 Pension Tr. Fund v. Rizzo Env't Servs. Corp.*, No. 19-cv-6622 (RPK (CLP), 2020 WL 7249289, at *9 (E.D.N.Y. Oct. 31, 2020), *R. & R. adopted*, 2020 WL 7021595 (E.D.N.Y. Nov. 30, 2020)

17

(awarding attorneys' fees in an ERISA action seeking withdrawal liability). Plaintiffs seek to recover $8,585 in attorney's fees and $582.09 in costs.[2]

a.      Hourly Rate

First, the Court must determine the reasonableness of the hourly rate charged. Attorney Grancio charged her normal hourly rate of $410.00. (Grancio Decl. ¶¶ 12.) Ms. Grancio attests that attorney Marlena Smith also worked on the matter, and her time was billed at a rate of $310 per hour. (*Id.* ¶ 13.) These hourly rates are reasonable. *See, e.g.*, *Rubin v. HSBC Bank USA, NA*, 763 F. Supp. 3d 233, 243-44 (E.D.N.Y. 2025) (finding hourly rates of up to $650 for partners and $450 for senior associates reasonable).

Plaintiff's counsel also billed for the time that two paralegals, Ms. Keating and Ms. Frankel, spent on the matter at a rate of $155.00 per hour. (Grancio Decl. ¶¶ 52, 53.) This fee is on the higher end of rates typically awarded in this district. *See Restrepo v. Dynamic Fire, Inc.*, No. 25-cv-2079 (NCM) (JAM), 2025 WL 3057385, at *14 (E.D.N.Y. Nov. 3, 2025), *R. & R. adopted*, 2026 WL 363526 (E.D.N.Y. Feb. 10, 2026). As in other recent decisions in this District, this Court finds it incongruous that Ms. Keating and Ms. Frankel would be billed at the same rate. *See id.* (discounting the rates of Ms. Keating and Ms. Frankel to $120.00 per hour where Ms. Keating graduated from college in 2014, Ms. Frankel graduated in 2021, and both were billed at $155.00 per hour). Recent precedent in this District has found that, "[c]onsidering the updated

---

[2] This action was initially commenced against both Defendant and The Ohio Casualty Insurance Company. (*See generally* Compl.) Although Plaintiffs ultimately entered into a stipulation of dismissal against The Ohio Casualty Insurance Company on December 16, 2024 (ECF 17), Plaintiffs incurred attorneys' fees and costs bringing the action against The Ohio Casualty Insurance Company, who was named because it issued a surety bond "guaranteeing payment of all fringe benefits and deferred wages owed by [Defendant] in connection with all Covered Work performed by its employees." (Compl. ¶ 32.) Because the "injury was principally perpetuated" by Defendant, this Court respectfully recommends that Defendant be assessed the entire amount owed in attorneys' fees and costs, including those related to The Ohio Casualty Insurance Company. *See Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Daniel Weintraub & Assocs.*, No. 04-cv-2611 (FB) (CLP), 2007 U.S. Dist. LEXIS 99437, at *31 (E.D.N.Y. Aug. 14, 2007), *R. & R. adopted*, 2007 U.S. Dist. LEXIS 84955 (E.D.N.Y. Nov. 13, 2007).

hourly rates in this District… the Court now considers [a paralegal's] hourly rate of $125 to be reasonable." *Rubin*, 763 F. Supp. 3d at 245. As such, this Court respectfully recommends discounting Ms. Keating and Ms. Frankel's hourly rates to $125.00.

### b.    Hours Billed

Attorneys Grancio and Smith worked on this matter for a total of 13 and 8.6 hours each, and paralegals Keating and Frankel worked on this matter for a total of 3.8 hours. (Grancio Decl. ¶ 17, Ex. AA, ECF 21-5.) A party seeking to recover attorneys' fees "bears the burden of establishing that the number of hours for which compensation is sought is reasonable." *Stratakos v. Nassau County*, 574 F. Supp. 3d 154, 160 (E.D.N.Y. 2021) (internal quotations and citation omitted). An application for attorneys' fees must be supported "by accurate, detailed, and contemporaneous time records." *Lin v. DJ's Int'l Buffet Inc.*, No. 17-cv-4994 (JS) (AYS), 2025 WL 2409784, at *4 (E.D.N.Y. May 16, 2015) (quoting *La Barbera*, 752 F. Supp. 2d at 277); *see also Gesualdi v. Gen. Concrete, Inc.*, No. 11-cv-1866 (CBA) (JO), 2013 WL 1192967, at *9 (E.D.N.Y. Feb. 1, 2013) ("The absence of contemporaneous records precludes any fee award in all but the most extraordinary of circumstances." (citing *Scott v. City of New York*, 626 F.3d 130, 133-34 (2d Cir. 2010)). Contemporaneous time records submitted in support of an application need not contain great detail so long as they identify the general subject matter of time expenditures. *See Perdue v. City Univ. of N.Y.*, 13 F. Supp. 2d 326, 345 (E.D.N.Y. 1998).

Here, Ms. Grancio has submitted detailed contemporaneous time records to support Plaintiffs' request for fees. The entries are clear and substantive, and show that Ms. Grancio, Ms. Smith, and the paralegals spent a reasonable amount of time (25.4 hours) working on this matter, including preparing the Summons and Complaint, requesting the Clerk's Certificate of Default, and preparing this motion. (*See* Grancio Decl. Ex. AA.) The total amount of time reflected in the

billing records does not appear to be outside the norm for a default judgment action under ERISA. Indeed, these hours are well within the range of hours expended in similar default judgment cases involving claims brought under ERISA. *See Trs. of Plumbers Loc. Union No. 1 Welfare Fund v. Temperini Mech. Inc.*, No. 18-cv-2596 (AMD) (LB), 2020 WL 571680, at *6 (E.D.N.Y. Jan. 13, 2020), *R. & R. adopted*, 2020 WL 565410 (E.D.N.Y. Feb. 5, 2020) (finding 49.8 hours of work on an ERISA default in which Ms. Grancio contributed reasonable); *Gesualdi v. Seacoast Petroleum Prods., Inc.*, 97 F. Supp. 3d 87, 108 (E.D.N.Y. 2015) ("recommend[ing] [in a case involving a claim for withdrawal liability] to Judge Spatt that, under the circumstances, a 40 percent reduction in Plaintiff's counsel's billed hours, from 39.55 to 23.73 is both reasonable and warranted."); *Bakery & Confectionery Union v. Mrs. Maxwell's Bakery, Inc.*, No. 21-cv-308 (RPK) (SJB), 2022 WL 18107257, at *14 (E.D.N.Y. Dec. 6, 2022) (finding that 34.25 hours expended in a similar case, though higher than average, was still reasonable); *Trs. Of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. Atl. Steel Sols., LLC*, No. 21-cv-2518 (CBA) (JRC), 2022 WL 4642735, at *11 (finding Ms. Grancio's 22.9 hours spent on ERISA default reasonable); *Trs. Of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. IKNA Constr. LLC*, No. 24-cv-0561 (CBA) (JAM), 2025 WL 447731, at *19 (finding 25.4 hours worked on an ERISA default case by Ms. Grancio and another attorney reasonable); *Gesualdi v. Interstate Masonry Corp.*, No. 12-cv-0383 (NGG) (VMS), 2014 WL 1311709, *13 (E.D.N.Y. March 25, 2014) (finding 23 hours spent on an ERISA default reasonable and collecting cases).

Accordingly, this Court respectfully recommends that Plaintiffs be awarded attorneys' fees in the amount of $8,471 ((13 hours at an hourly rate of $410.00) + (8.9 hours at an hourly rate of $310.00) + (3.8 hours at a discounted rate of $125) = $8,471).

20

c.    *Costs*

Finally, Plaintiffs requests an award of $582.09 for litigation costs. (*See* Grancio Decl ¶ 18, Ex. AA.) Reasonable and identifiable out-of-pocket disbursements ordinarily charged to clients are recoverable. *See LeBlanc–Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998). However, the party seeking to recover costs "bears the burden of adequately documenting and itemizing the costs requested." *Ganci v. U.S. Limousine Svc. Ltd.*, No. 10-cv-3027 (JFB) (AKT), 2015 WL 1529772, at *8 (E.D.N.Y. April 2, 2015) (quoting *Pennacchio v. Powers*, No. 05-cv-985 (RRM) (RML), 2011 WL 2945825, at *2 (E.D.N.Y. July 21, 2011)). Here, Plaintiffs support their request for an award of costs with an itemized accounting of costs incurred. (*See* Grancio Decl. Ex. AA.) The costs listed appear reasonable and customary, and include filing fees, process service costs, and online research charges. As such, this Court respectfully recommends that Plaintiffs be awarded costs in the amount of $582.09.

## III.    CONCLUSION

For the foregoing reasons, I respectfully recommend that the District Court: (1) grant Plaintiffs' motion as to liability; (2) grant Local 1 Funds' request for damages in the amount of $10,897.71 in estimated delinquent contributions, $1,198.99 in interest, and $2,179.54 in liquidated damages for January 2024; $33,885.11 in actual contributions, $3,232.15 in interest, and $6,777.02 in liquidated damages for February through April 2024; $400 in administrative fees; $31.51 in lost earnings and $430.94 in interest; and additional interest on the delinquent contributions at the rate of 10% per annum from March 29, 2025 through the date of judgment, plus mandatory post-judgment interest at the statutory rate; (3) deny National Funds' request for damages, with leave to submit an amended declaration correcting the contribution calculations; (4) and grant Plaintiffs $582.09 in costs, but reduce Plaintiffs' award of attorneys' fees to $8,471.

A copy of this Report and Recommendation is being served on Plaintiffs via ECF. The Clerk of Court is respectfully directed to mail a copy of this Report and Recommendation to Defendant LG Elite Plumbing, Inc. at the following address forthwith: (1) 99 Washington Avenue, Albany, NY 12231; and (2) 103-02 Rockaway Blvd, Ozone Park, NY 11417. Plaintiffs are also directed to mail a copy of this Report and Recommendation to Defendant and to file proof of service of mailing by February 20, 2026.

Within 14 days of service, any party may serve and file specific written objections to this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Any requests for an extension of time to file objections shall be directed to Judge DeArcy Hall. If a party fails to object timely to this Report and Recommendation, it waives any right to further judicial review of this decision. *See Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022).

**SO ORDERED.**

Brooklyn, New York
February 17, 2026

_Lara K. Eshkenazi_
LARA K. ESHKENAZI
United States Magistrate Judge

22